In re SAN ANTONIO ACRES, 72 PLUS, Debtor.

RAND DEVELOPMENT CORPORATION, Plaintiff,

v.

SAN ANTONIO ACRES, 72 PLUS, Warren Group S/A 73, a General Partnership, Georgeanne Warren, Inc., dba Great Western Investment Company, Georgeanne Warren and Barnes and Jorrie, a Texas General Partnership, Defendants.

SAN ANTONIO ACRES, 72 PLUS, Plaintiff,

v.

WARREN GROUP S/A 73, a General Partnership, Georgeanne Warren, Inc., dba Great Western Investment Company and Georgeanne Warren, Defendants,

Barnes & Jorrie, Real Party in Interest.

Bankruptcy No. LA 81–02307–JB.

Adv. Nos. LA 83–2721–JB, LA 83–2079–JB.

United States Bankruptcy Court, C.D. California.

Feb. 29, 1984.

Alvin S. Kaufer, Nossaman, Guthner, Knox & Elliott, Los Angeles, Cal., for Barnes & Jorrie.

Robert Garcin and Richard Havel, Sidley & Austin, Los Angeles, Cal., for San Antonio Acres 72 Plus.

Jeffrey Graves, Knapp, Grossman & Marsh, Los Angeles, Cal., for Warren Group.

Mark Winthrop, McKittrick, Jackson, De-Marco & Peckenpaugh, Newport Beach, Cal., for Rand Development Corp.

## MEMORANDUM OF DECISION DENYING MOTIONS FOR SUMMARY JUDGMENT AND TO VACATE JUDGMENT; ORDER TERMINATING ORDER LIMITING DISCOVERY

RALPH G. PAGTER, Bankruptcy Judge.

A hearing was held on February 7, 1984, at 10:00 A.M. before the Honorable Ralph G. Pagter, United States Bankruptcy Court, to consider motions for summary judgment made by San Antonio Acres, 72 Plus, and Barnes and Jorrie in Adv. LA 83–2721–JB. Also heard was a motion to reconsider and vacate an order (in Adv. LA 83–2079–JB) directing conveyance of real property filed by Barnes and Jorrie and joined in by the Warren Group S/A 73, Georgeanne Warren, Inc., and Georgeanne Warren.

### SUMMARY

The debtor in the underlying bankruptcy proceeding, (S.A.A. 72) entered into an Agreement for Sale and Purchase of Real Estate (the Agreement) dated May 10, 1982, with a partnership known as the Warren Group, for the sale of undeveloped real property located in Texas. The purchase price was $1,095,000.

S.A.A. 72 filed an application for authority to sell the property with the Bankruptcy Court. An order authorizing the sale according to the terms of the Agreement was signed by Judge Bergener on July 26, 1982 and entered the next day. Following issuance of this order authorizing sale to the

Warren Group, delays were experienced in closing the transaction. S.A.A. 72 was comprised of a large number of cotenant-investors, and an undetermined amount of the delay was due to the time required to collect separate deeds from the cotenants. A substantial portion of the delay was apparently caused by the inability of the Warren Group to obtain financing.

In late January or early February, 1983, S.A.A. 72 negotiated with another potential purchaser, the Rand Development Corporation, for the purchase of the same property.

Rand submitted a written offer to purchase the property (the Earnest Money Contract), dated February 11, 1983, which specified a purchase price of $1,275,000. On February 14, 1983, San Antonio filed a second application for authority to sell the property, this time to Rand, on the terms contained in the Earnest Money Contract. The application informed the court that the sale to the Warren Group would not yield any return to S.A.A.'s cotenant-investors, and was no longer of any benefit to the estate, while the proposed sale to Rand would enable the debtor to pay all its creditors and would allow the cotenants-investors to realize a portion of their investments. S.A.A. 72 did not specifically request termination of the July 27th order authorizing a sale to the Warren Group.

The application authorizing sale to Rand was apparently heard ex parte by Judge Bergener on February 14, 1983. An order authorizing the sale was signed February 22, 1983, but was not entered until February 28, 1983.

At about the same time as the application for authority to sell to Rand was filed, S.A.A. 72 filed a Complaint for Breach of contract and Mandatory Injunction against the Warren Group in order to compel it to convey any interest it had in the property that was the subject of the Agreement for Sale and Purchase back to San Antonio. A hearing was held before Judge Russell on February 22, 1983. The Warren Group did not appear. Judge Russell ordered the Warren Group to convey all its interest in the seventy-two acres before 12:00 noon on February 23, 1983.

The sale to the Warren Group closed on February 22, 1983, apparently at a time after Judge Russell's order had been entered. Employing the device of a double escrow, a third purchaser, Barnes and Jorries, (B & J) which was not named in the application for authority to sell to the Warren Group, purchased the property from the Warren Group at an undisclosed price. B & J executed a repurchase agreement with the Warren Group which gave the Warren Group an option to rebuy the property for $1,600,000 within 120 days.

Rand filed its Complaint for Declaratory Relief and Specific Performance against the debtor, the Warren Group, and B & J, on March 10, 1983. Rand alleged that it had a contract with S.A.A. 72 for the purchase of the property, and that the sale to the Warren Group and hence to B & J was void because the injunction issued by Judge Russell terminated the authority of S.A.A. 72 to convey the property to the Warren Group and because there was no court approval of the "real" sale to B & J.

I. SAN ANTONIO'S MOTION FOR SUMMARY JUDGMENT

S.A.A. 72 moved for summary judgment against Rand's complaint on the ground that no genuine issue as to any material fact existed concerning the absence of any contractual right on Rand's part to acquire the property. Nor, according to S.A.A. 72, were the facts in dispute that no legal or equitable grounds existed to contest the sale because the property had been sold pursuant to a valid court order; namely, Judge Bergener's order of July 27, 1983.

Summary judgment is proper only when there is no genuine issue as to any material fact. Bankruptcy Rule 7056, Fed. R.Civ.P. Rule 56(c). *Northrop Architectural Sys. v. Lupton Mfg. Co.* (9th Cir.1971) 437 F.2d 889, 891. The court must view the evidence produced in connection with the motion in the light most favorable to the party opposing the motion. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Viewing the pleadings and declarations submitted in connection with the motion for summary judgment in the light most favorable to Rand, it cannot be said beyond doubt that there are no material facts in dispute. Rand's complaint alleges that it had a contract with S.A.A. 72 giving it the right to purchase the seventy-two acres. Lack of physical delivery is not fatal to Rand's position in view of Rand's evidence supporting the possibility that S.A.A. 72 may be estopped from denying delivery of the executed Earnest Money Contract. (Paragraph 8, 11, 12c, 15 of the Decl. of Victor K. Dullye).

Turning to the validity of the sale to the Warren Group, Judge Bergener's order authorizing sale to the Warren Group stated that the sale should be "on the terms and conditions set forth in that certain Agreement for Sale and Purchase of Real Estate attached as Exhibit A to the Application to Sell." That Agreement recites that time is of the essence. (Paragraph 5.06) The closing date is given as July 15, 1982, but a proviso states that in no event shall the transaction be closed and the proceeds disbursed until the title insurer is prepared to insure marketable title in the purchaser. (Paragraph 2.02).

According to the declaration of D. William Wagner, attorney for S.A.A. 72, it appears that the requisite deeds had been collected from the individual cotenant-investors and San Antonio was in a position to perform all its obligations under the contract by mid-October, 1982. (Paragraphs 4, 5 of Wagner decl.).

This court is of the opinion that as a matter of law, when the court-authorized agreement was not performed by the Warren Group in mid-October, at the time that S.A.A. 72 was in a position to perform, the order authorizing the sale to the Warren Group probably expired and required further action by this court to extend it. As was evidenced by the debtor's application to sell, nothing in the original Agreement provides that the Warren Group could obtain an extension of the closing date due to its inability to obtain financing. Extensions of the closing date made a material difference to the estate because interest continued to accrue on indebtedness secured by the property of the estate.

In addition to the above legal issue, the following unresolved factual issues, which are by way of example and not of limitation, are raised by Rand's complaint and the declarations submitted in support of and in opposition to S.A.A.'s motion for summary judgment:

1.  a) For whose benefit was the second paragraph in paragraph 9 of the Earnest Money Contract included?

    b) If for Rand's benefit, could it or did it waive the provision?

    c) Is S.A.A. 72, by its actions disclosed above, estopped to contend that there was no delivery?

2.  What were the precise contents of the extension agreements alleged to have been entered into by San Antonio, particularly the oral extension? (A legal question as to the validity of an oral extension to a written agreement cannot be resolved until the facts are presented and determined.) The only copy of the escrow instructions or any extensions thereof, ever presented to this court were contained as Exhibit I to the Declaration of Alvin S. Kaufer filed July 22, 1983. The Court cannot tell whether an undated page ("Supplement"), the first line of which reads: "The instructions are supplemented in the following only," was part of the original escrow instructions or an amendment later executed. And the Court cannot ascertain any authorization from this Court for the original escrow closing date of November 1, 1982 in the escrow, or November 30, 1982 or January 15, 1983 in the Supplement.

3.  Why did D.A.A. 72 continue to deal with the Warren Group after the date on which it filed its ex parte application for authority to sell the property to Rand?

4. Why were San Antonio's representatives not interested in accepting an increased offer by Rand of $25,000 or more?

5. What were the costs and expenses assumed by the Warren Group in their Agreement which were not assumed by Rand or covered by the increased purchase price?

6. Why were the differences in the terms of the offers in 5 immediately above not brought to the attention of the court in S.A.A.'s application for authorization to sell to Rand?

7. With reference to Judge Russell's order of February 22, 1983, directing the Warren Group to convey its interest in the property back to S.A.A. 72, what was the exact timing of the closing of the sale to the Warren Group?

## II. MOTION BY BARNES AND JORRIE FOR SUMMARY JUDGMENT

B & J's motion for summary judgment was made on the grounds that Rand's complaint raised no triable issue with respect to their purchase from the Warren Group in that Rand had no contractual right to purchase the property and the order authorizing sale to Rand was ineffective because the property had already been sold on February 22, 1983 pursuant to a valid order by the time the order authorizing sale to Rand was entered on February 28, 1983.

In addition to the factual issues raised by Rand's complaint and discussed under S.A.A. 72's motion above, B & J's motion brings into issue its bona fides, evidence of which it is in a position to supply to the court, but did not. B & J argue in its supplemental memorandum that section 363(m) of the Bankruptcy Code should ap-

ply. That section provides in part that the reversal or modification on appeal of an authorization to sell property of the estate does not affect the validity of a sale under such authorization to an entity that purchased the property in good faith, unless the authorization was stayed pending appeal. Without deciding on this motion whether 363(m) applies to situations other than appeals, it is sufficient to defeat B & J's motion to note that 363(m) contains a good faith requirement.[1] Additional factual issues are thus raised as to:

8. What knowledge B & J had of: (a) the negotiations between the Warren Group and S.A.A. 72; (b) the filing of San Antonio's complaint for breach of contract and mandatory injunction against the Warren Group; (c) the application to sell to Rand; and, (d) the February 22nd order compelling the Warren Group to convey its interest to S.A.A. 72.

The court also notes the possible applicability of 363(n) of the Bankruptcy Code to the effect that a trustee may void a sale if the sale price is controlled by agreement among potential bidders.

## III. MOTION TO RECONSIDER AND VACATE ORDER DIRECTING CONVEYANCE BY BARNES AND JORRIE

B & J filed a motion under Fed.R. Civ.Proc. 60(b) on April 27, 1983, requesting that the Court reconsider and vacate its order of February 22, 1983, directing the Warren Group to convey its interest to S.A.A. 72. Rule 60(b) expressly authorizes a *party* or its *legal representative* to obtain relief by motion from an order. In some

---

1. 1) In the case at bar, no one could move for a stay order because the sale to the Warren Group and B & J closed apparently without notice to the Debtor or Rand.

2) The Court notes that, in a partially legible document attached as Exhibit B to the Declaration of Joel Bax, the following language was stricken:

"Warren Group SA73 and/or Georgann R. Warren will provide immediately telegraphic advice from Pete Breisacher and Robert F.

Dyer acknowledging the earnest money contract between S.A.A. 72 Plus and Warren Group S.A. 73 is in full force and effect at least until February 28, 1983."

From this, the Court could reasonably conclude either that (a) B & J knew the sales agreement between Warren Group and S.A.A. 72 was not in effect, or (b) B & J did not want the Debtor or this Court to learn that B & J was not the real purchaser of the Debtor's property.

instances, one who is in privity with a party has standing to make the motion. See *National Acceptance Co. v. Frigidmeats, Inc.* (7th Cir.1980) 627 F.2d 764, 766. B & J was not a party to the proceeding in which the order was issued directing the Warren Group to convey, and we do not need to decide whether B & J was in privity with a party because the factual issues' set forth above pertaining to the existence of a Rand contract and to the good faith of B & J remain.

█ Rule 60(b) provides in part that a party or its legal representative may obtain relief from an order by a motion under the rule based on mistake, inadvertence, surprise or excusable neglect. However, B & J has not shown mistake, inadvertence or excusable neglect. Counsel for the Warren Group and its general partner were admittedly served with a copy of the complaint for Breach of Contract and Mandatory Injunction in time to attend the hearing on February 22, 1983 and advise Judges Bergener and Russell of their intention to close escrow that day. They chose not to do so, electing rather than filing an answer as required by standard procedure, to send a mailgram to the busiest bankruptcy court in the country. This action does not rise to the level of "mistake," since the summons directed the Warren Group to file a written response and the mailgram was not a response, nor was it "excusable neglect."

## IV. GENERAL CONSIDERATIONS

Because of the numerous serious allegations of misconduct on the part of the Debtor and its counsel, the Court believes a full hearing on the merits is necessary to air fully these allegations.

Accordingly, because there are numerous unresolved factual issues,

(1) S.A.A. 72's motion for summary judgment is denied;

(2) B & J's motion for summary judgment is denied;

(3) B & J's motion to reconsider and vacate order is denied.

Further, this Court's order limiting discovery is hereby terminated.